UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MADISON WATERS, et al.,

    Plaintiffs,

v.

COLUMBIA DEBT RECOVERY, LLC, et al.,

    Defendants.

_____/

Case No. 1:24-cv-972

Hon. Hala Y. Jarbou

## **OPINION**

Plaintiffs Madison Waters and her mother, Patricia Waters, brought this action under federal and state law against the following Defendants: Columbia Debt Recovery, LLC ("Columbia"); GREP Southwest, LLC ("Greystar"); "Equifax Inc. through Information Services, LLC" ("Equifax"); and "Trans Union Corp. through Trans Union Consumer Solutions" ("Trans Union"). (2d Am. Compl. 1, ECF No. 96.) Before the Court are a motion to dismiss filed by Equifax and Trans Union (ECF No. 97), and a motion to dismiss filed by Greystar (ECF No. 98). For the reasons herein, the Court will grant the motions.

### I. BACKGROUND

**A. Plaintiffs' Allegations**

According to the second amended complaint, on November 15, 2018, Madison completed a rental application and entered a lease agreement to lease a room at "The Rocks," a residential complex operated by Greystar in East Lansing, Michigan. (2d. Am. Comp. ¶¶ 10, 13.) The term of the lease was from August 17, 2019, to July 31, 2020. When Madison signed the lease application, she included Patricia as a guarantor for the lease. (*See* Lease Appl., ECF No. 96-2,

PageID.888.) After receiving a copy of the lease agreement and the guaranty form, Patricia called Greystar on December 7, 2018, to discuss her objections to the lease. She told Greystar that she would guarantee payment of the lease, but she did not intend to sign the guaranty form. (2d Am. Compl. ¶ 21.) Greystar accepted her "verbal guarantee" of the lease and gave her access to an online account to be used for making lease payments. (*Id.* ¶ 23.) Greystar accepted a security deposit on December 12, 2018. (*Id.* ¶ 25.)

In April 2019, Madison received her room assignment from Greystar. Greystar assigned her a room with Madison's chosen roommates, as it had promised as an incentive for Madison to agree to sign the lease agreement early. A few days later, however, Greystar assigned Madison to a different room with new roommates, telling her that she had no choice but to accept the new room assignment. (*Id.* ¶ 27.)

Due to concerns about the lease terms and the room assignment, Madison decided to terminate the lease and did so on July 29, 2019, three weeks before her expected move-in date. (*Id.* ¶ 28.) On August 23, 2019, Greystar contacted Madison by letter and told her that she owed $5,884.50. That amount apparently included 12 months of "accelerated rent" at $564.00 per month, minus Madison's security deposit of $883.50. (*See* 8/12/2019 Final Account Statement, ECF No. 96-15, PageID.967.) Plaintiffs contend that Madison did not owe this full amount because Greystar promised, and the lease agreement provided, that any rent Madison owed would be offset by rent received from a replacement tenant. (2d Am. Compl. ¶¶ 33-35.) Greystar sent similar letters to Madison on August 30 and October 10, 2019, telling her that she owed $5,884.50, with interest accruing on unpaid balances.

Patricia contacted a Greystar representative by phone on January 6, 2020, asking about Greystar's "mitigation obligation." (*Id.* ¶ 46.) The representative said she "didn't know anything about that." (*Id.*)

Greystar then hired Rent Recovery Solutions, LLC to recover the asserted debt. In February 2020, Madison received a letter from Rent Recovery attempting to collect $6,019.12, which included the unpaid balance of $5,884.50, plus interest. (*Id.* ¶ 48.)

In March 2020, Plaintiffs confirmed that someone had moved into the room Madison had intended to lease, which meant that Greystar had been able to recover at least some of the rent Madison owed under the lease agreement. Consequently, according to Plaintiffs, they did not owe the full amount sought by Greystar or by Rent Recovery. Patricia then told Rent Recovery that they disputed the debt because Greystar had mitigated some of it. Rent Recovery responded by pointing to a "final accounting statement" from Greystar purporting to show the amount due. (*Id.* ¶ 91.)

Greystar and/or Rent Recovery sent details about the debt to Equifax and Trans Union, who recorded it in Madison's credit file. Patricia then wrote to Equifax and Trans Union on behalf of Madison in November 2021, telling them that she and Madison disputed the debt sought by Rent Recovery. Equifax and Trans Union eventually removed the record of her debt on December 18, 2021, after Rent Recovery "withdrew the erroneous reporting." (*Id.* ¶ 98.)

Greystar then hired Columbia to recover the debt it claimed Madison owed. In February 2022, Columbia reported to Equifax and Trans Union that Madison owed $5,884.50. (*Id.* ¶¶ 57, 100.) Columbia contacted Plaintiffs in March 2022, telling them about the debt owed. By this time, Plaintiffs had moved to Maryland. In response, Plaintiffs told Columbia that they disputed the debt because Greystar had mitigated part of the amount due. Plaintiffs supported their dispute

with evidence that Madison never occupied the rental property and that someone else had leased the room from Greystar, thereby reducing Madison's debt. (*Id.* ¶ 109.) Columbia replied that the debt was valid.

On April 18, 2022, Patricia contacted Equifax and Trans Union disputing the information provided to them. (*Id.* ¶ 121.)

In June 2023, Greystar allegedly acknowledged that it had mitigated the amount originally due under the lease agreement by leasing the room to another tenant as early as January 2020. (*Id.* ¶ 62.) Plaintiffs claim that this mitigation reduced the amount owed to approximately $1,936.50. (*Id.* ¶ 67.) Nevertheless, Greystar had sought to recover the full amount and hired Rent Recovery and Columbia to collect it.

Plaintiffs allege that Madison suffered injury due to the inaccurate debt reported to Equifax and Trans Union. When she applied to rent another apartment, her application was denied due to the information in her credit report. (*Id.* ¶ 126.)

**B. Plaintiffs' Claims**

Based on the foregoing allegations, Plaintiffs assert six claims.

In Count I, they assert that Greystar made various misrepresentations to Plaintiffs about the amount owed after termination of the lease, about its intent to find a replacement tenant who would reduce that amount, and about its practice of removing a credit listing when a replacement tenant is found. In addition, Greystar allegedly made false statements to Rent Recovery and Columbia about the amount due under the terminated lease.

In Count II, Plaintiffs contend that Greystar and Columbia violated the Maryland Consumer Debt Collection Act ("MCDCA") by claiming Plaintiffs owed an amount that Defendants knew they did not owe.

In Count III, Plaintiffs contend that Columbia defamed Madison by "open[ing] a tradeline against Plaintiff" after it was aware that Madison did not owe Greystar any money, thereby impacting Madison's credit report and credit reputation. (*Id.* ¶¶ 159, 161-62.)

Count IV asserts that Columbia engaged in unfair trade practices under Maryland law by seeking recovery of a debt Plaintiffs did not owe and by opening the tradeline that adversely impacted Madison's credit report.

Count V asserts that Columbia violated the Fair Debt Collection Practices Act (FDCPA) (citing 15 U.S.C. § 1681s-2(b)), by failing to conduct a reasonable investigation of Plaintiffs' dispute regarding the debt owed to Greystar.

Count VI asserts that Equifax and Trans Union violated the Fair Credit Reporting Act (FCRA), particularly 15 U.S.C. § 1681i(a), by failing to conduct a reasonable reinvestigation to determine whether the debt reported by Rent Recovery and Columbia was accurate.

**C. Procedural History**

Plaintiffs filed their action in the United States District Court for the District of Maryland in October of 2022. In August of 2024, while Defendants' motions to dismiss were pending, that court transferred the case to this district "pursuant to 28 U.S.C. § 1404(a) and in the interest of justice." (8/22/2024 Order, ECF No. 122, PageID.1149.)

## II. STANDARD

**A. Applicable Law**

Due to the transfer, the Court must clarify whether it applies the law of this Court or the law applicable to the District of Maryland. When "a federal court transfers a diversity case under § 1404(a), the transferee court applies the *state law* that the transferor court would have applied to any questions of *state law*." *AER Advisors, Inc. v. Fidelity Brokerage Servs., LLC*, 921 F.3d 282, 289 (1st Cir. 2019). But "'[n]othing' . . . compels one federal court to apply another's

5

interpretation of *federal law* after a case's transfer." *Id.* at 290 (quoting *In re Korean Air Lines Disaster of Sept. 1, 1983*, 829 F.2d 1171, 1186 (D.C. Cir. 1987) (Ginsburg, J., concurring)); *see* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3846 (4th ed. 2024) ("[C]ourts generally conclude that . . . [t]he transferee court applies its own interpretation of federal law."). "Since the federal courts are all interpreting the same federal law, uniformity does not require that transferee courts defer to the law of the transferor circuit." *Murphy v. FDIC*, 208 F.3d 959, 966 (11th Cir. 2000) (cited with approval in *In re U.S. Dep't of Def., U.S.E.P.A. Final Rule: Clean Water Rule: Definition of Waters of U.S.*, 817 F.3d 261, 272 (6th Cir. 2016), *rev'd on other grounds by, Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109 (2018)). Thus, as to Plaintiffs' federal claims and issues of federal law and procedure, the Court applies precedent from the Sixth Circuit.

**B. Rule 12(b)(6)**

A plaintiff's complaint must make a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "[t]he plausibility standard . . . is not akin to a probability requirement . . . it asks for more than a sheer possibility" that the alleged misconduct occurred. *Id*. "Specific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017). The Court need not accept "threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements," *Iqbal*, 556 U.S. at 678, or "formulaic recitations of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

Courts are generally bound to consider only the complaint when resolving a motion to dismiss under Rule 12(b)(6) unless the Court converts the motion to one for summary judgment. *Wysocki v. IBM Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). "However, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (internal citations omitted).

### C. Rule 12(b)(1)

The standard for evaluating a Rule 12(b)(1) motion depends on the nature of the "attack" on subject matter jurisdiction. A "facial attack" on subject matter jurisdiction "merely questions the sufficiency of the [complaint]." *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.3d 320, 325 (6th Cir. 1990). Facial attacks like the one here are reviewed under the same standard as applied to a Rule 12(b)(6) motion: the Court accepts the plaintiff's well-pleaded allegations as true and asks whether subject matter jurisdiction exists based on the complaint. *Id.*

### III. ANALYSIS

#### A. Federal Claims

##### 1. FCRA (Count VI)

Plaintiffs contend that Equifax and Trans Union violated the FCRA, 15 U.S.C. § 1681i, by failing to review and reinvestigate the information provided to them about the debt owed by Madison and then failing to correct that information in Madison's credit file. "The FCRA was passed to 'ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy.'" *Berry v. Experian Info. Sols., Inc.*, 115 F.4th 528, 533 (6th Cir. 2024)

7

(quoting *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007)). The statute requires credit reporting agencies ("CRAs") like Equifax and Trans Union "'to adopt reasonable procedures' for reporting that 'assure maximum possible accuracy of the information concerning the individual about whom the report relates.'" *Id.* at 533-34 (quoting 15 U.S.C. §§ 1681(b), 1681e(b)) (internal citation omitted).

When a consumer makes a dispute about the accuracy of information in their credit file, "the CRA must 'conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the [consumer's] file.'" *Id.* at 534 (quoting 15 U.S.C. § 1681i(a)(1)(A)). The FCRA permits a consumer to bring suit for a negligent or willful violation of the accuracy requirements. *Id.* (citing 15 U.S.C. §§ 1681n, 1681o).

To successfully plead a claim, Plaintiffs must allege the following: (1) Defendants' consumer files about Plaintiffs contained inaccurate information; (2) Defendants negligently or willfully failed to conduct a reasonable reinvestigation to ensure maximum possible accuracy of Plaintiffs' information in response to a dispute; (3) Plaintiffs were injured; and (4) Defendants were the proximate cause of their injury. *See id.* at 536.

### (a) Patricia

Defendants argue that Patricia lacks standing to assert a claim under the FCRA. "In order to satisfy the requirements of Article III standing, a plaintiff must show a concrete and particularized injury-in-fact that is fairly traceable to the defendant's actions and that is likely to be redressed by a favorable decision of the court." *Doe v. Univ. of Mich.*, 78 F.4th 929, 942 (6th Cir. 2023). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought because standing is not dispensed in gross." *Id.* (citations omitted). Here, Patricia alleges no personal injury stemming from the alleged FCRA violations, all of which

pertain to Madison's credit file.  Plaintiffs do not contend that Equifax or Trans Union did anything that impacted Patricia's credit file.  Instead, they contend that these defendants failed to investigate and remove inaccurate information in *Madison*'s credit file.  Plaintiffs allege no facts from which to infer that such conduct injured Patricia.

Patricia relies on her efforts to assist Madison as her injury, but a "plaintiff generally must assert [her] own legal rights and interests, and cannot rest [her] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  Patricia's efforts to assist Madison were not injuries to Patricia's rights and interests.  Just as a lawyer does not obtain standing when assisting a client, Patricia did not obtain standing by assisting her daughter.  Consequently, Patricia lacks standing to pursue the FCRA claims at issue in this case.

### (b) Madison

Equifax and Trans Union argue that Madison does not state a claim against them because she raised a *legal* dispute regarding the debt shown in her credit file, rather than an actionable inaccuracy that a CRA could reinvestigate.  Courts recognize that "CRAs are not well suited to adjudicate legal defenses to a debt."  *Berry*, 115 F.4th at 538.  For that reason, "they are not liable for reporting information that may be *legally* inaccurate."  *Chaitoff v. Experian Info. Sols., Inc.*, 79 F.4th 800, 814 (7th Cir. 2023) (emphasis added).  A legal inaccuracy is one that requires applying the law to a set of facts.  *See id.* at 815.  "'The power to resolve these legal issues exceeds the competencies of consumer reporting agencies'"; hence, a CRA is unable to resolve such a dispute—"only a court could."  *Id.* at 814 (quoting *Denan v. Trans Union LLC,* 959 F.3d 290, 295 (7th Cir. 2020)).  "And since no amount of investigation by the CRA could substitute for a binding adjudication of the parties' legal dispute," a CRA is not liable for reporting such disputed information or failing to reinvestigate it; the information is "accurate" as far as the CRA is concerned.  *Id.*

9

"The paradigmatic example of a legal dispute is when a consumer argues that although his debt exists and is reported in the right amount, it is invalid due to a violation of law." *Id.* at 815 (quoting *Chuluunbat v. Experian Info. Sols., Inc.*, 4 F.4th 562, 567 (7th Cir. 2021)). Such disputes "amount to collateral attacks on the disputed debt," which the FCRA does not require CRAs to resolve. *See id.* In short, inaccuracies that require "interpreting legal rights" or "making legal judgments" to resolve fall outside the scope of a CRA's reinvestigation obligations under the FCRA. *Chuluunbat*, 4 F.4th at 569.

Here, Madison's credit file allegedly showed an unpaid debt of $6,019.12 sought by Rent Recovery. Later, it showed that she owed a debt of $5,884.50 sought by Columbia. Plaintiffs allegedly disputed both these amounts with Equifax and Trans Union. Patricia's letter to Equifax and Trans Union in November 2021, which is attached to the complaint, reveals the nature of the disputes regarding that information.

In that letter, Patricia asserted multiple legal defenses to Greystar's and Rent Recovery's right to recover the debt. Among other things, she argued that Michigan law prohibited Greystar from recovering accelerated rent payments unless that amount "is determined by the courts," which had not happened. (11/21/2021 Letter to CRAs, ECF No. 96-13, PageID.951.) She also argued that both Michigan law and the terms of the lease required Greystar "to mitigate (minimize) the damages." (*Id.*) She pointed to an addendum to the lease agreement stating that a tenant "*may* not be liable for the total accelerated amount because of Owner's obligation to minimize damages." (*Id.* (emphasis added).) She claimed that Greystar had mitigated its damages by leasing the room to another tenant; consequently, Madison owed no debt at all. (*Id.*, PageID.951.) Alternatively, Patricia argued that, under Michigan law, Greystar had "released" Madison's obligations under the lease by assigning her space to a new tenant. (*Id.*, PageID.952.) Patricia further argued that

10

neither Greystar nor Rent Recovery could recover any unpaid rent until they obtained a judgment in state court, which they elected not to do. She asserted that their attempts to collect on the debt violated the FDCPA.

The issues raised in the letter are legal disputes that CRAs are not competent to resolve. To evaluate Plaintiffs' claim that Madison was not liable for the debt, either in whole or in part, the CRAs would have had to apply Michigan law or interpret the terms of the lease and determine the extent to which Madison could rely upon her defenses. Plaintiffs frame their dispute as one about a factual inaccuracy in the amount of debt Madison owed rather than the validity of the debt itself. Neither Equifax nor Trans Union were qualified or obligated to reinvestigate or correct that inaccuracy because such an investigation would have required evaluation of legal arguments concerning Greystar's duty to mitigate in order to determine the allegedly correct amount that Madison owed.

Plaintiffs also note that Rent Recovery reported a debt of $6,019.12, and then withdrew that report. Later, Columbia reported a debt of $5,884.50. Plaintiffs argue that the different amounts reported should have triggered a reasonable reinvestigation by the CRAs. However, the underlying issue is the same. Plaintiffs do not contend that Madison satisfied the debt owed and possessed records conclusively establishing that fact. Instead, they contend that the amounts reported to the CRAs were inaccurate because they did not account for Greystar's mitigation or Madison's legal rights. As discussed above, neither Equifax nor Trans Union were competent to resolve those issues, which were legal disputes.

In short, Madison does not state a claim under the FCRA because she has not alleged factual inaccuracies. The inaccuracies she challenges are founded on legal disputes and do not give rise to a claim against a CRA. *See Berry*, 115 F.4th at 538-39 (citing *Chaitoff* and

*Chuluunbat*). Accordingly, the Court will dismiss Equifax and Trans Union for failure to state a claim.

### 2. FDCPA (Count V)

In the title of Count V, Plaintiffs purport to assert a claim against Columbia under the FDCPA, 15 U.S.C. § 1692, though the body of that particular count relies solely on a provision of the FRCA, 15 U.S.C. § 1681s-2(b). (*See* 2d Am. Compl. ¶ 176.) That provision imposes obligations on the "furnishers" of consumer information to CRAs; it requires them to reinvestigate disputes regarding the completeness or accuracy of the information provided to CRAs. 15 U.S.C.§ 1681s-2(b)(1). Elsewhere in their complaint, Plaintiffs contend Columbia did not observe a fourteen-day period to communicate with an alleged debtor before pursuing collection efforts, as required by the FDCPA. (*See* 2d Am. Compl. ¶ 106.) Columbia has not moved to dismiss the claims against it.

Nevertheless, the Court can *sua sponte* dismiss a claim for lack of jurisdiction. For reasons similar to those stated above with respect to Patricia's FCRA claim, Patricia lacks standing to pursue claims under the FDCPA against Columbia. As discussed above, Plaintiffs do not allege that Columbia disclosed anything about Patricia to the CRAs. Nor do Plaintiffs allege that Columbia sought to recover a debt from Patricia. Consequently, she does not allege a cognizable injury to her own rights or interests stemming from the alleged violations of the FDCPA or the FCRA by Columbia. Accordingly, the Court will dismiss Patricia's federal claim against Columbia in Count V. Dismissal of Patricia's federal claim against Columbia does not impact *Madison's* claim against Columbia in Count V, which remains pending.

### B. State Law Claims

Apart from Madison's claim against Columbia under the FDCPA/FCRA, Plaintiffs' remaining claims arise under state law. Count I asserts that Greystar misrepresented what was

owed under the lease. Count II asserts that Greystar and Columbia violated Maryland's Consumer Debt Collection Act, Md. Code, Com. Law § 14-202, by attempting to collect sums that they allegedly knew Plaintiffs were not responsible for. Count III asserts that Columbia defamed Madison by falsely reporting to the CRAs that she owed a particular debt. Count IV asserts that Columbia violated Maryland's Consumer Protection Act, Md. Code, Com. Law § 13-101, by pursuing recovery of a debt that Madison did not owe.

### 1. Subject Matter Jurisdiction

Greystar argues that the Court lacks subject matter jurisdiction over the state-law claims against Greystar. The Court disagrees.

### (a) Supplemental Jurisdiction

As the basis for this Court's subject matter jurisdiction, Plaintiffs' complaint cites 28 U.S.C. § 1331, which gives the Court original jurisdiction over actions "arising under" federal law. *Id.* That provision applies here because Plaintiffs assert federal claims. This Court possesses supplemental jurisdiction over Plaintiffs' state-law claims if they "are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Greystar argues that Plaintiffs' claims against it (i.e., Counts I and II) are not part of the same case or controversy as the federal claims. It argues that Counts I and II concern its rights under a contract between it and Madison. It contends that the remaining claims concern the actions of debt collectors and CRAs, which involve a different case or controversy.

Claims are part of the same case or controversy when they "'derive from a common nucleus of operative fact' such that a plaintiff 'would ordinarily be expected to try them all in one judicial proceeding.'" *Batista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 694 (6th Cir. 2017) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)). Here, the common nucleus

13

of operative fact is Madison's debt to Greystar. Claims against Greystar regarding its representations about that debt share a common nucleus with the claims against Columbia and the CRAs regarding the collection and reporting of that same debt. Thus, the state-law claims are part of the same case or controversy as the federal claims, giving the Court supplemental jurisdiction.

### (b) Diversity Jurisdiction

Plaintiffs argue, in the alternative, that the Court might possess original jurisdiction over their state-law claims because the parties are diverse. Under 28 U.S.C. § 1332, the Court has jurisdiction over actions where the "amount in controversy exceeds the sum or value of $75,000" and the suit is between citizens of different states. 28 U.S.C. § 1332(a)(1). However, Plaintiffs do not attempt to establish all the elements of diversity jurisdiction, even though it is their burden to do so. *See Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010) ("The burden of persuasion for establishing diversity jurisdiction, of course, remains on the party asserting it."). For instance, neither Plaintiffs' complaint nor their briefing addresses the amount-in-controversy requirement. Indeed, it is not clear how the damages at issue here could amount to more than $75,000.

Furthermore, Plaintiffs do not adequately address the diversity requirement. In their briefing, they simply contend that they are Maryland residents, that Columbia is a "foreign corporation," that Equifax maintains its principal place of business in Georgia, that Trans Union is a Delaware corporation with its principal place of business in Illinois, and that Greystar is a Delaware limited liability company. (Pls.' Resp. Br. 15, ECF No. 104.) These assertions do not clarify the citizenships of any Defendant other than Trans Union. According to the complaint, Equifax, Columbia, and Greystar are limited liability companies. The citizenship of a limited liability company is the citizenship of each of its partners or members. *Delay v. Rosenthal Collins Grp., LLC*, 585 F.3d 1003, 1005 (6th Cir. 2009). Plaintiffs do not identify the citizenships of any

14

member or partner of Equifax, Columbia, or Greystar,[1] so the Court is not persuaded that it possesses diversity jurisdiction. In the absence of diversity jurisdiction, the Court possesses only supplemental jurisdiction over Plaintiffs' state-law claims.

### (c) Exercising Supplemental Jurisdiction

Greystar asks the Court to decline to exercise supplemental jurisdiction over the claims against it, which arise only under state law. The Court's exercise of that jurisdiction is discretionary. The Court can decline to exercise supplemental jurisdiction over claims arising under state law if they "substantially predominate" over the federal claims. 28 U.S.C. § 1367(c)(2). A state law claim can substantially predominate "in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought[.]" *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Court can also consider "the likelihood of jury confusion in treating divergent legal theories of relief, that would justify separating state and federal claims for trial[.]" *Id.* "A district court should look to 'values of judicial economy, convenience, fairness, and comity' in deciding whether the exercise of supplemental jurisdiction is proper.'" *McDaniels v. Plymouth-Canton Cmty. Schs.*, 755 F. App'x 461, 468 (6th Cir. 2018) (quoting *Gamel v. City of Cincinnati*, 625 F.3d 949, 951-52 (6th Cir. 2010)).

Here, Plaintiffs' sole remaining federal claim concerns Columbia's obligations under federal law after reporting a debt to the CRAs that Plaintiffs disputed. By contrast, Plaintiffs' four remaining claims under state law largely pertain to Columbia and Greystar's representations to Plaintiffs and their attempts to collect a full year of rent before and after Greystar allegedly mitigated what Madison owed under the full term of the lease. There is some overlap between the

---

[1] According to its corporate disclosure statement, Greystar has a complex set of owners. (*See* GREP Southwest, LLC Disclosure Statement, ECF No. 88.)

federal and state-law claims to the extent that the lease generally governed Madison's obligations to Greystar (and, by extension, her debt obligations to Columbia), but the state-law claims involve a broader scope of conduct and are subject to different legal standards than the federal claim. And each of those state-law claims requires a separate analysis. Consequently, the state-law claims involve a wider scope of proofs and issues, substantially predominating over the single federal claim against Columbia.

Plaintiffs assert that it would be inconvenient to litigate their case in more than one court, but there would be only one claim left to litigate in federal court. There is no reason why the others could not be adequately litigated in state court, which as a matter of comity, is better positioned to resolve Plaintiffs' state-law claims.

Plaintiffs also point to the fact that this case has been pending for several years. They contend that declining jurisdiction will result in further delay. But any delay up to this point is due, in large part, to Plaintiffs' multiple amendments to its complaint, the most recent of which it filed in February 2024. Further delay resulting from a dismissal of the state-law claims without prejudice will not significantly impact the parties at this stage. There is no indication that the parties have engaged in any significant discovery. And until now, no court has examined any of Plaintiffs' claims on their merits. In particular, no court has invested significant time in examining Plaintiffs' state-law claims, so exercising jurisdiction over them would do little to achieve judicial economy. Accordingly, the balance of factors weighs against exercising supplemental jurisdiction over Plaintiffs' state-law claims.

### IV. REQUEST TO STRIKE

As part of its motion to dismiss, Greystar asks the Court to strike paragraphs 79 through 85 of the second amended complaint under Rule 12(f) of the Federal Rules of Civil Procedure. In short, these paragraphs allege that: (1) Patricia Waters suffered harm by expending time and money

disputing the debt; (2) Greystar threatened to injure Madison's credit worthiness in order to coerce her to pay the debt; (3) Greystar and its related entities have a pattern or practice of assessing charges they have no right to collect and then using credit reporting or a collections agency to coerce payment; and (4) there are other lawsuits demonstrating similar conduct by Greystar (or an entity related to it).

Ruel 12(f) permits the Court to strike matter that is "redundant, immaterial, impertinent, or scandalous." Fed. R. Civ. P. 12(f). Motions to strike are discretionary, disfavored, and not frequently granted. *Operating Eng'rs Loc. 324 Health Care Plan v. G&W Constr. Co.*, 783 F.3d 1045, 1050 (6th Cir. 2015). "The function of the motion is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." *Id.* (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986)). But courts are very reluctant to determine legal issues on a motion to strike. *See ACT, Inc. v. Worldwide Interactive Network, Inc.*, 46 F.4th 489, 499 (6th Cir. 2022). Similarly, this Court is reluctant to strike factual matters that have even a slim possibility of relevance to the case. The Court discerns no prejudice to Greystar by leaving them in the complaint. Accordingly, the Court will deny Greystar's request.

## V. CONCLUSION

In summary, the Court will grant the motions to dismiss. Specifically, the Court will dismiss Count VI of the second amended complaint, the only claim against Equifax or Trans Union. The Court will also dismiss Patricia Waters's claim against Columbia Debt Recovery, LLC in Count V of the second amended complaint for lack of standing. And the Court will dismiss Plaintiffs' claims arising under state law because the Court declines to exercise supplemental

17

jurisdiction over them. The Court will not strike portions of the complaint. The only claim remaining in this case is Madison Waters's federal claim against Columbia in Count V of the second amended complaint.

An order will enter consistent with this Opinion.

Dated: October 25, 2024         /s/ Hala Y. Jarbou
                                HALA Y. JARBOU
                                CHIEF UNITED STATES DISTRICT JUDGE